# IN THE COURT OF APPEALS OF IOWA

No. 14-1693
Filed January 28, 2015

**IN THE INTEREST OF V.Z.,**
**Minor Child,**

**L.R., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Hancock County, Karen K. Salic, District Associate Judge.

The mother appeals the juvenile court's termination of her parental rights to her daughter, V.Z. **AFFIRMED.**

Jane M. Wright, Forest City, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, and David C. Solheim, County Attorney, for appellee State.

Philip Garland, Garner, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VOGEL, P.J.**

The mother appeals the juvenile court's termination of her parental rights to her daughter, V.Z., asserting the State failed to prove by clear and convincing evidence V.Z. would suffer neglect or harm if returned to the mother's care. She further argues reasonable services were not provided and it is not in V.Z.'s best interest for the mother's rights to be terminated. Given the mother's lack of understanding regarding V.Z.'s basic needs, the State proved by clear and convincing evidence V.Z. cannot be returned to the mother's care. Additionally, because the mother did not raise the issue of adequate services prior to the termination hearing, error was not preserved, and we decline to address the merits of her argument. Moreover, due to the mother's lack of compliance with services until shortly before the termination hearing, as well as her demonstrated inability to parent V.Z., termination is in V.Z.'s best interests. Consequently, we affirm the juvenile court's order terminating the mother's parental rights.

V.Z., born March 2013, is the mother's fourth child.[1] V.Z. first came to the attention of the Department of Human Services (DHS) after the mother and father left her with her great-grandfather, who was unable to care for her, while they went to drink at a bar. The grandfather did not know they were leaving V.Z. with him and woke up to hear V.Z. crying. Unable to get out of his chair because of his physical limitations, he summoned help from his lifeline. Both he and V.Z.

---

[1] The mother does not have custody of any of V.Z.'s older siblings. Additionally, at the time of the termination hearing, the mother was pregnant with her fifth child. This child's father is the mother's current paramour, with whom she currently resides, and who is twenty years her senior. The paramour testified at the termination hearing, and in its opinion the juvenile court indicated it was concerned the relationship between him and the mother was abusive.

were taken by ambulance to the hospital, where it was discovered V.Z. was incredibly dirty, with animal hair and dirt caked between her fingers and under her chin. Nurses bathed V.Z. twice in order to cleanse her from the accumulated filth, and the examining physician concluded she had suffered from neglect. When the mother and father arrived at the hospital they appeared very intoxicated.

Upon a home inspection, DHS workers discovered a house that was extremely cluttered and dirty, filled with animal urine and feces. There was nowhere for V.Z. to be safe. She was removed from the home on November 17, 2013, and placed in foster care. The juvenile court adjudicated her a child in need of assistance (CINA) on December 17, 2013.

The mother has a history of alcohol abuse, and she was ordered to complete substance abuse treatment as part of the underlying CINA case. She began treatment in May 2014 but was discharged unsuccessfully after failing to attend sessions. She reentered treatment in July 2014, which, at the time of the termination hearing, she attended regularly. However, the counselor noted that she was not interacting at an appropriate level, and the counselor further had concerns the mother did not understand the concepts of her treatment. Nonetheless, the mother submitted to three drug screenings, two of which came back negative with the third being unreadable.

An IQ test, with a psychological component, was completed. In its permanency order of May 16, 2014, the court noted the following based on the assessment:

> [The mother] requires constant prompts to complete tasks, seems to have little ambition and is unnecessarily dependent on others. She is observed by others to be unreliable, difficult to maintain her self-control and be overly familiar with strangers as well as overly needy and blaming others for mistakes . . . . She is rated as low average in social adjustment. She also lacks self-reflection, which is consistent with the impact of traumatic stress.
>
> She was found to have a long history of developmental trauma as well as adult traumatic experiences, and likely has a significant attachment disorder. She also has extreme defensiveness in facing her difficulties and limitations, manifested by the immature defense mechanisms of a child. There were significant indications of psychological issues that are the major source of difficulty in progressing in this case.

Though ordered to attend mental health counseling, the mother failed to schedule or attend sessions until two days prior to the termination hearing.

The mother and father separated in January or February of 2014, and the mother moved into another paramour's residence an hour away from V.Z.'s foster home. She initially lied to the DHS workers regarding her living situation but informed them in July she had moved. At the termination hearing, the DHS worker testified she noticed several beer cans both in and around the home when visiting the mother's residence in September. The mother stated the beer cans belonged to the members of her paramour's band.

The mother initially attended supervised visits sporadically, often leaving shortly after arriving. Beginning in July 2014, though, the mother began attending visits consistently and stayed throughout the visit. She requested that V.Z. be brought to her paramour's home and the visitations be increased to twice each week; however, DHS was unable to transport V.Z. to the mother's residence due to the distance. The mother stated she did not have the time to make it to two visits each week because of her schedule.

During visits, DHS workers noted the mother could not take care of V.Z.'s basic needs without significant prompting and reminders. For example, she continued to bring baby food to the visits even though V.Z. was no longer eating baby food, and the mother had been repeatedly told to bring other food. Furthermore, she did not adequately supervise V.Z., allowing her to run out of the room and only retrieving her when the DHS worker told her to do so. She did not demonstrate any understanding of the many things DHS workers would try to teach her. Due to her inability to parent, the DHS workers testified V.Z. could not be returned to the mother's care without suffering harm.

Although the mother had secured two part time jobs at the time of the termination hearing, her employment history is very unstable. She walked off her job at a convenience store, and it was reported she had arrived at work intoxicated on several occasions. Additionally, the DHS workers observed that she appeared overwhelmed at the prospect of having to participate in visits and services, in addition to maintaining employment.

The following services were offered to the mother during the pendency of this proceeding: family safety, risk, and permanency services; supervised visitation; substance abuse evaluations and treatment; IQ testing; individual therapy; medication management; housing, employment, and transportation assistance; housekeeping services and organization; Humane Society and law enforcement assistance with the animal issues; and parenting, time management, and hygiene classes.

Due to the mother's substantial noncompliance with services and her inability to progress beyond fully-supervised visits, the State petitioned to

terminate her parental rights. A contested hearing was held on September 30, 2014, and on October 3, 2014, the juvenile court issued an order terminating the mother's parental rights under Iowa Code section 232.116(1)(h) (2013).[2] The mother appeals and the State resists, with V.Z.'s guardian ad litem filing a joinder to the State's response.

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.* To terminate parental rights under Iowa Code section 232.116(1)(h), the State must prove by clear and convincing evidence the child is three years of age or younger, has been adjudicated a child in need of assistance, has been removed from the home for six of the last twelve months, and will suffer adjudicatory harm if returned to the parent's care.

The mother first claims the State failed to prove by clear and convincing evidence her rights to V.Z. should be terminated under paragraph (h), that is, she argues V.Z. would not suffer harm if returned to her care. She cites the fact she began to consistently attend visits and counseling sessions, she completed substance abuse treatment, and she has maintained sobriety. However, the record demonstrates the mother currently does not have the ability to adequately parent V.Z. She needs nearly constant prompting during fully-supervised visits to do even the most basic parenting tasks, such as feeding V.Z. the proper food and making sure she does not choke. While she has demonstrated some

---

[2] The juvenile court also terminated the father's parental rights under this paragraph; however, he does not appeal.

improvement, a great deal of this has been due to her paramour encouraging her, providing financial assistance and a place to live, and transporting her to most of her obligations. Moreover, this improvement did not take place until shortly before the termination hearing. As the juvenile court noted:

> The goals have remained the same since the initiation of the case, but have not been completed. [The mother is] unable to manage time with [V.Z.] for more than two hours once per week. [The mother is] unable to consistently meet [V.Z.'s] needs in a supervised setting unless [she] is given constant prompts, encouragement, redirection, and education. [The mother] does not have stable or adequate employment to provide for [V.Z.'s] financial needs. [The mother] is unable to manage her minimal responsibilities and obligations. For example, [the mother] has two part-time jobs (so sporadic it is difficult to have an average—from 9 hours to 29 hours per week), and indicated she sometimes has difficulty with conflicting schedules, and is overwhelmed by her once weekly visitation, once weekly substance abuse, and once every other week mental health appointment. She presently has 20-32 total hours of obligations and responsibilities during any given week. If [V.Z.] were in her care that would be a 24 hour obligation, and she has not demonstrated the ability to manage anywhere near that heavy of an obligation.

The record supports this assessment. Consequently, we agree with the juvenile court the State proved by clear and convincing evidence V.Z. would suffer adjudicatory harm if returned to the mother's care.

The mother next asserts reasonable efforts were not made to reunite her and V.Z. Specifically, she claims services she requested—which include a consistent parent partner, a copy of the monthly service provider reports, and visitation at the mother's apartment—as well as a psychological evaluation ordered by the juvenile court, were not provided. However, the mother did not present this argument before the juvenile court, which in turn did not rule on the issue. Consequently, the mother did not preserve error with regard to this claim,

and we decline to address the merits of her argument. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002).

Furthermore, termination of the mother's parental rights is in V.Z.'s best interests. The mother has failed to demonstrate any significant progress throughout the eleven months V.Z. had been out of her care prior to the termination hearing. Though she began to consistently attend visits in July, she had yet to progress beyond one supervised visit each week. The DHS workers involved in her case testified the mother still cannot adequately parent V.Z. and has not demonstrated the ability to absorb and act upon the workers' suggestions in any sort of long-term manner. Though she has received individual instruction from the DHS workers, as well as parenting classes, the mother still does not have the ability to care for V.Z. unsupervised, let alone parent her full time. "We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998); *see also* Iowa Code § 232.116(2). The record reflects the mother cannot care for V.Z., even while V.Z. is thriving in her foster home; therefore, termination of the mother's parental rights is in V.Z.'s best interest, and we affirm the order of the juvenile court.

**AFFIRMED.**